We need not go so far as to decide that he was guilty of contributory negligence, nor will we decide that he was not guilty thereof and thus run the risk of creating, with slight ground for distinction, an exception to the salutary rule of authority that a passenger on a railroad train should not leave his seat for the purpose of alighting until the train comes to a stop.

We pass over the question of contributory negligence altogether, and we hold that the nonsuit was properly allowed for lack of proof establishing negligence on the part of defendant's employee.

The lower court entered a compulsory nonsuit which it subsequently refused to take off. Plaintiff appealed.

*Error assigned,* among others, was in refusing to take off the nonsuit.

*Frank A. McGuigan,* with him *Harris B. Hamlin,* for appellant.

*Benjamin R. Jones,* with him *J. H. Oliver,* for appellee.

PER CURIAM, May 7, 1917:

It clearly appears from the concise opinion of the court below, refusing to take off the nonsuit, that no negligence of defendant was shown, and, on that opinion, the judgment is affirmed.

---

## In re Miners Bank of Wilkes-Barre.

*Trusts and trustees—Deeds—Coal royalties—Construction—Life interests—Intention.*

A husband and wife, owners of the royalties under coal leases, made a conveyance of such rights to a trustee (1) to pay to the husband a certain sum annually during his life, (2) to pay one-fourth of the balance of the income to the wife during the life of her husband and after his death to pay her such an amount as she

would be entitled to receive under the intestate laws as his widow, and (3) to pay the balance in equal shares to their three children. After the death of the wife, who survived her husband, the trustee continued to distribute two-ninths of the royalties to each of the three children, retaining in its hands one-third of the aggregate royalties formerly paid to the wife during her lifetime. *Held,* the deed of trust limited the wife's interest in the royalties to a life estate, that the trust was revoked by her death and distribution of the fund was properly ordered to be made to the three children in equal shares.

Argued April 9, 1917.    Appeal, No. 244, Jan. T., 1916, by Louise B. Hancock, from decree of C. P. Luzerne Co., May T., 1916, No. 900, of distribution, on case stated In re Miners Bank of Wilkes-Barre, Successors to Miners Savings Bank of Wilkes-Barre, Trustees for William James Hancock, Louise B. Hancock and Anna M. Hancock Smith.    Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ.    Affirmed.

Case stated to determine rights to parties under declaration of trust.

The facts appear by the opinion of the lower court, WOODWARD, J.:

The Miners Bank of Wilkes-Barre succeeded the Miners Savings Bank as trustee in a deed of trust from William Hancock and wife, dated November 19, 1904, providing for the distribution of coal royalties arising under three separate leases in said assignment set forth.

As the rights of the parties depend upon this assignment, we will here set it out in full:

"Know all Men by these Presents, that we, William Hancock, and Isabella B. Hancock, his wife, parties named in the following mentioned coal leases, viz. First. That certain coal lease between Jonathan Hancock, William Hancock et al. with the Lehigh Valley Coal Company, dated the first day of January, A. D. 1891, and recorded in the Recorder's office in and for the County of Luzerne, Pennsylvania, in Deed Book No. 300, page 314,

etc.   Second.    That certain coal lease between David
Perkins, William Hancock, et al. and the Mount Lookout
Coal Company dated the 21st day of February, A. D.
1889, and recorded in the aforesaid Luzerne county, in
Deed Book No. 315, page 22.   Third.  That certain coal
lease between William Hancock and wife and the Mount
Lookout Coal Company, dated the 27th day of February,
1893, and recorded in the aforesaid Recorder's office, in
Deed Book No. 314, page 505, for and in consideration
of the sum of one dollar, to us in hand paid at and be-
fore the sealing and delivery hereof, the receipt whereof
is hereby acknowledged, do by these presents assign,
transfer and set over unto the Miners Savings Bank of
Wilkes-Barre, Pa., trustee, its successors and assigns, all
our right, title and interest in and to the aforesaid three
coal leases, and in and to the messuages, tenements and
tracts of land therein mentioned and described, as well
as all the coal royalties or rents therein secured to be
paid, as well those now due as those hereafter to fall due
thereon.

"To Have and to Hold the Same in Trust, Neverthe-
less, for the following uses and purposes, viz:

"To receive and receipt for all moneys due or hereafter
due under the above mentioned coal leases, or any of
them, and after deducting a reasonable sum for the costs
and expenses of this trust, to distribute and pay over the
same as follows:  First. To pay to William Hancock, one
of the above mentioned assignors, three hundred dollars
per year in quarterly installments of seventy-five dollars
each, as the royalties are paid in;  Second. To pay one-
fourth of the balance thereof to Isabella B. Hancock,
one of the assignors hereof, during the life of the above
named William Hancock, and after his death, to pay to
the said Isabella B. Hancock, such amount as she would
be entitled to receive under the intestate laws of the Com-
monwealth of Pennsylvania, as widow of the said Wil-
liam Hancock;  Third. To pay the balance in equal shares
to William James Hancock, Louise B. Hancock, and

Anna M. Hancock Smith, their heirs and assigns;—all to be payable likewise quarterly as the same may be received by the said trustee.

"And Upon the Further Trust, to enforce payment of all royalties due or to fall due under the said leases, by due process of law or otherwise as in the said leases provided, and to enforce performance of the covenants of the said leases as fully as the said William Hancock might or could do were he still the owner thereof, and the title still remained in him.

"This assignment is to be irrevocable during the life of the above named William Hancock and Isabella B. Hancock and the life of the survivor of them.

"In Witness Whereof, we, the above named William Hancock and Isabella B. Hancock, his wife, have hereunto set our hands and seals this nineteenth day of November, A. D. one thousand nine hundred and four (1904).

WILLIAM HANCOCK    (Seal)
"MERRITT SAX,        ISABELLA B. HANCOCK (Seal)
"ANNA M. HANCOCK SMITH.
"Witness as to the signature of
    Isabella B. Hancock.
    "G. F. TOWNEND."

The trustee distributed the coal rentals and royalties under this assignment down to the death of Isabella B. Hancock, the surviving assignor on the 9th day of October, 1914, according to the terms of the assignment, that is, three hundred dollars a year to William H. Hancock and one-fourth of the balance to Isabella B. Hancock during his life, and after his death on the 8th day of February, 1906, one-third to Isabella and the balance in equal shares to their three children, Anna, William and Louise. After the death of Isabella B. Hancock, the trustee continued to distribute the royalties paid under the leases two-ninths to Anna M. Hancock Smith, two-ninths to William James Hancock, and two-ninths to

Louise B. Hancock, retaining in its hands one-third of the aggregate royalties formerly paid to Isabella during her life, which is the balance shown by the account in the case stated, the proper distribution of which is the question now before the court.

Isabella B. Hancock, at her death on the 9th day of October, 1914, left a will dated January 31, 1908, in which after giving specific bequests of one hundred dollars to each of her children, William and Anna, she gave the residue of her estate to her daughter Louise, subject to certain trusts. The questions for the court as set forth in the case stated are as follows:

A. What estate was given Isabella B. Hancock?

(a) Life estate only, or

(b) One-third of the royalties absolutely and therefore to whom shall the trustee pay the balance on hand?

(c) Is there a difference between the interests under the Lehigh Valley Coal Company lease and the other leases?

B. Is the trust a continuing one or does it terminate with the death of Isabella B. Hancock?

I. If the court shall be of the opinion that Isabella B. Hancock took only a life estate in all the royalties, then distribution shall be made to the three children in equal shares.

II. If the court shall be of the opinion that Isabella B. Hancock took one-third of the royalties absolutely, then distribution of said fund shall be made to the executor and executrix under her will for distribution to the beneficiaries therein named.

III. If the court shall be of the opinion that Isabella B. Hancock took only a life estate in the royalties arising under the Lehigh Valley Coal Company lease and one-third absolutely in the Mount Lookout Coal Company leases, then distribution to be made in the proportions above set forth between the parties entitled thereto.

The court is of the opinion:

A. That Isabella B. Hancock's estate was limited to a

life estate only by the assignment, and that there is no
difference in this respect between her interest under the
Lehigh Valley Coal Company lease and the other leases.

B. The trust was revoked by the death of Isabella B.
Hancock. It follows from this opinion that distribution
shall be made to the children in equal shares, and this
without any distinction between the leases.

The assignment from William Hancock and Isabella
B. Hancock, his wife, to the Miners Savings Bank of
Wilkes-Barre, Pa., trustee, its successors and assigns,
was of all their right, title and interest in and to the
three coal leases, and in and to the tracts of land therein
described, as well as all the coal royalties or rents there-
in secured to be paid, as well those now due as those here-
after to fall due thereunder. By this assignment, Wil-
liam and Isabella B. Hancock divested themselves of all
their interest in these leases, so that when she made her
will on January 31, 1908, Isabella had no interest in the
leases or the land described therein, or the royalties
thereunder, that she could dispose of by will.

The intention of the parties as expressed in their lan-
guage seems free from doubt. It was to secure the estate
to their three children in equal shares, subject to certain
life payments which they reserved to themselves. It
was to give up their former rights in the leases and the
coal and substitute therefor other rights specified in the
assignment, to-wit, on the part of William, to substitute
for his interest which was entire and absolute, a yearly
cash payment of three hundred dollars a year; on the
part of his wife, to substitute for her interest, whether
dower or such as the intestate laws gave her in her hus-
band's personal estate, a cash payment of one-fourth the
royalty during his life after his three hundred dollars
was deducted, and one-third after his death. The trus-
tee was to pay money, and when they directed the trus-
tee, after the death of William, "to pay to the said Isa-
bella B. Hancock such amount as she would be entitled
to receive under the intestate laws of the Commonwealth

of Pennsylvania as widow of the said William Hancock," they meant "such amount" of money.   It was a rather clumsy method of measuring the amount of money to be paid, to-wit, one-third.   They did not mean that the trustee was to convey a one-third or other interest in the estate to the widow.   This was the interpretation of the language put upon it by the widow, for she accepted the one-third of the royalty in cash and made no demand for a conveyance of an interest in the leases or the coal.

The assignors divested themselves of their former estates during the term of the trust, and neither had anything to dispose of during that term.   If Isabella had died first, William would have continued to receive three hundred dollars a year, nor could he have conveyed any interest by deed or will.   William derived his estate by descent from his father.   If his interest in the coal after it was leased was real estate his wife had a dower interest which could only be released by her own act, but which she released when she executed the assignment. If his interest was personalty he could convey it without any act on her part and did convey it when he executed the assignment.   The conveyance was absolute during the term of the trust which was coterminous with the life of the survivor.   On her death, the trust ended and the estate passed to the three children in equal shares.

The lower court decreed that the balance in the hands of the trustee be equally distributed among the three children of the creators of the trust.   Louise B. Hancock appealed.

*Error assigned,* among others, was the decree of the court.

*Edmund E. Jones,* with him *William C. Price,* for appellant.

*J. Q. Creveling,* of *D. L. and J. Q. Creveling,* for appellee.

PER CURIAM, May 7, 1917:

The decree in this case is affirmed, at appellant's costs, on the opinion of the learned court below, in pursuance of which it was entered.

---

## Ford *v.* Lehigh and Wilkes-Barre Coal Company, Appellant.

*Negligence—Master and servant—Mines and mining—Position of hoisting signal—Safety hole.*

In an action against a mining company to recover for the death of plaintiff's son, who was killed by a car while attempting to ring a bell used to signal an engineer in charge of cars, where the only question was whether defendant's failure to provide a safety hole in which to signal was negligence, the case was for the jury and a verdict and judgment for the plaintiff was sustained, where it appeared that in other mines and in other parts of the defendant's mine the signal to hoist or lower the cars was located in a safety hole.

Argued April 10, 1917. Appeal, No. 316, Jan. T., 1916, by defendant, from judgment of C. P. Luzerne Co., May T., 1915, No. 546, on verdict for plaintiff in case of Mary Ann Ford v. Lehigh and Wilkes-Barre Coal Company. Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's son. Before WOODWARD, J.

From the record it appeared that Stanley Ford, the plaintiff's son, was employed at the Hollenbach No. 2 colliery or slope of the defendant in Luzerne County, on April 18, 1914. Ford's duty was in part to signal to the engineer the manner in which the trip was to be hoisted or lowered. This signal was given from an electric push button hanging from a wire and situated about three or four feet from the rail, and between the slope and a lift